1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| TERRY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:09-cv-00810-RCJ-LRL |
| vs. | ) | |
| | ) | |
| CLARK COUNTY PUBLIC ADMINISTRATOR | ) | **ORDER** |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case arises out of probate proceedings and the settlement of a wrongful death claim. Pending before the Court are five motions to dismiss. Plaintiffs have filed no timely responses, the latest of which was due on June 10, 2010, but on October 6, 2010 Plaintiffs filed a "Supplement to Response" to the motions.[1] For the reasons given herein, the Court grants the motions to dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

On November 2, 2002, an employee of the Silver Ridge Health Care Center in Las Vegas, Nevada gave decedent Charles L. Williams, Sr. ("Williams") breakfast orally despite the fact that Williams was being fed through a feeding tube in his stomach. (Compl. ¶¶ 9–11, May 6, 2009, ECF No. 50-2). The accidental feeding caused Williams' death. (*Id.* ¶ 11). Plaintiffs Terry Williams ("Plaintiff"), as personal representative of Williams' estate, and the Williams' estate ("the Estate")

---

[1]This constitutes consent to granting the motions. L.R. Civ. Prac. 7-2(d).

submitted a will to probate in Maryland. (*Id.* ¶ 21).  Defendant Jared Shafer, a former Clark County Public Administrator, allegedly petitioned a Nevada state court for a letter of Co-special Administration by presenting an "out-of-state, estranged" relative and allegedly concealed the existence of the other relatives pursuing probate in Maryland. (*Id.* ¶ 25).[2]  When Plaintiff discovered that Shafer had done this, Shafer contested the will in the Maryland court, forced Plaintiff's joinder in the Nevada state court, and challenged the rulings of the Maryland court in the Nevada court, allegedly in violation of the Full Faith and Credit Clause. (*Id.* ¶¶ 27–31).

Plaintiffs sued Defendants pro se in the U.S. District Court for the Central District of California on sixteen causes of action: (1)–(2) Declaratory Relief of Violations of the Full Faith and Credit Statute; (3) Violations of 42 U.S.C. § 1981; (4) Violations of 42 U.S.C. § 1983 (equal protection and due process); (5) Violations of 42 U.S.C. § 1985; (6) Intentional Misrepresentation; (7) Declaratory Judgment; (8) Unjust Enrichment; (9) Breach of Contract; (10) Breach of Fiduciary Duty; (11) Accounting; (12) Malpractice; (13) Tortious Interference; (14) Civil Conspiracy; (15) Intentional Infliction of Emotional Distress ("IIED"); and (16) RICO, 18 U.S.C. § 1962.  That court transferred venue to this District due to lack of personal jurisdiction over Defendants in California. (*See* Order, Apr. 28, 2009, ECF No. 50-50).

Five groups of Defendants have separately moved to dismiss: (1) Gregory Dallas Horton (ECF No. 93); (2) Stewart Bell, Nevada Commission on Ethics, State of Nevada, and Valorie Stutz-Vega (ECF No. 94); (3) Las Vegas Metropolitan Police Department ("LVMPD") (ECF No. 97); (4) Don Ashworth, Clark County Coroner's Office, Clark County Public Administrator, Clark County, and Shafer (ECF No. 99); and (5) Terry Coffing, Mark Morrow, and Elyse M. Tyrell (ECF No. 100).

///

---

[2]It is difficult to tell from the Complaint whether Plaintiffs mean to allege what Defendants actually did or only what they planned to do but did not actually do, because the allegations are largely written in the subjunctive mode.

## II.    RULE 12(b)(6) STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d

449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial

notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th

Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion

to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp.*

*Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III.   ANALYSIS

### A.   Horton

Defendant attorney Horton explains the procedural history more completely than Plaintiffs

do.  At a settlement conference on or about July 21, 2003, Plaintiff and her two siblings, Ann and

Charles Jr., who were all represented by counsel, agreed that they would separate their father's estate

equally and that attorneys Gilkey, who represented Plaintiff and Ann, and attorney Coffing, who

represented Charles Jr., would represent the Estate in its wrongful death action. (Horton Mot.

Dismiss. 3:19–26, May 21, 2010, ECF No. 93).  Horton replaced Coffing because of a conflict of

interest. (*Id.* 3:27–28).  A stipulated judgment bearing the signature of Plaintiff and her siblings

provided inter alia: (1) that the siblings would dismiss the Maryland probate action; (2) that the

siblings would have to unanimously consent to settlement of the Estate or to terminate Horton and

Gilkey as the Estate's attorneys; (3) that each party was entitled to sue for wrongful death separately,

with Horton representing Charles, Jr. and Gilkey representing Plaintiff and Ann; (4) that the Estate

would be equally divided between the siblings; and (5) that the siblings would have to unanimously

consent to any litigation regarding the Estate. (Stip. J., Nov. 2, 2004, ECF No. 93-3).  The siblings,

including Plaintiff, signed an additional confession of judgment. (*See* Conf. J., Oct. 27, 2004, ECF

No. 93-4).

They then proceeded with the wrongful death claim against AHP of Las Vegas ("AHP"), the

assisted living center where Williams had resided.  AHP settled with the siblings for $1 million.  After

existing attorney's liens against the Estate were satisfied, the siblings split $659, 867.46 equally,

1    resulting in awards of $219,955.82 apiece before attorney's fees and costs. Plaintiff and her siblings

2    signed the settlement agreement ("SA"). (*See* SA, Nov. 16, 2006, ECF No. 93-5).

3           Horton notes that Plaintiff cannot represent the Estate in any litigation under the Stipulated

4    Judgment, because at least Charles, Jr. has not consented to any such litigation. (*See* Charles

5    Williams, Jr. Aff., May 12, 2010, ECF No. 93-6). At most, Plaintiff can represent himself alone.

6    Horton appears to be correct. Plaintiff also brings her claims in her individual capacity, however.

7           Next, Horton argues the defense of accord and satisfaction, that Plaintiff has not pled her

8    claims with the required particularity under Rule 9(b), and that as to the non-fraud-related contractual

9    and malpractice claims, Horton represented only Charles, Jr., and never Plaintiff. Defendant appears

10   to be correct on all counts.

11          Next, Horton notes that Plaintiff alleges the SA is void but has not paid back or claimed she

12   is ready, willing, and able to pay back her proceeds from the SA, and she cannot have rescission only

13   of her adversary's benefits under a contract and not of her own benefits. *See Allenbach v. Ridenhour*,

14   279 P. 32, 37 (Nev. 1929).

15          Finally, Horton argues that Plaintiff has failed to join indispensable parties under Rule 19, i.e.,

16   the attorneys who represented him in obtaining the settlement: Christensen Law Offices and Robert

17   Cossack. The last two arguments are not necessary to examine. The Court will dismiss as against

18   Horton based on failure to plead fraud with particularity against him, because Horton is not a state

19   actor, and because Plaintiff pleads no contractual relationship with Horton.

20          **B.    The Bell Defendants**

21          Stewart Bell, Nevada Commission on Ethics, State of Nevada, and Valorie Stutz-Vega move

22   to dismiss under Rule 12(b)(6). First, as Defendants note, Judges Bell and Stutz-Vega are absolutely

23   immune for their judicial acts. Judges and courts have absolute civil immunity for their judicial acts,

24   including as against claims under 42 U.S.C. § 1983 and regardless of any erroneous application of

25   the law, unless there is a "clear absence" of subject-matter jurisdiction. *Stump v. Sparkman*, 435 U.S.

1   349, 356–58 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335 (1871)).  Nevada's district courts have

2   general jurisdiction, which naturally includes probate jurisdiction, unless probate jurisdiction is

3   specifically granted to the justice courts by statute. *See* Nev. Const. art. VI, §§ 6(1), 8.  The Nevada

4   Legislature has not granted Nevada's justice courts probate jurisdiction, *see* Nev. Rev. Stat. § 4.370,

5   and it therefore remains with the district courts.  Even assuming the existence of a prior, valid, final

6   judgment in probate from Maryland—of which there is no evidence and which appears extremely

7   unlikely based on the stipulated judgment requiring the siblings to terminate the Maryland probate

8   action—the Full Faith and Credit Clause does not deprive a later court of jurisdiction, but simply

9   requires that the later court honor the judgments of the first court.  Judges Bell and Stutz-Vega had

10  jurisdiction.  The Court therefore dismisses all claims as against them.

11      Next, Defendants note that the State of Nevada and the Nevada Commission on Ethics ("the

12  State Defendants") are immune under the Eleventh Amendment.  The Eleventh Amendment prohibits

13  suits against states in federal court without their consent.  In a parallel but independent analysis, 42

14  U.S.C. § 1983 only creates jurisdiction for suits against "persons."  Neither a state nor its employees

15  acting in their official capacities are "person[s]" who can be sued under § 1983, *Will v. Mich. Dep't*

16  *of State Police*, 491 U.S. 58, 66 (1989), but state employees may be sued in their individual capacities

17  as "persons" under § 1983, *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  State employees sued in their

18  individual capacities for injunctive relief or for damages to be paid out of their private resources are

19  not protected by a state's Eleventh Amendment immunity. *Edelman v. Jordan*, 415 U.S. 651, 664–65

20  (1974); *Ex parte Young*, 209 U.S. 123, 159–60 (1908).  Additionally, individuals in their private

21  capacities (but not municipalities or individuals in their official capacities) enjoy qualified immunity

22  against claims of constitutional violations where the right alleged to have been violated was not

23  clearly established at the time of the alleged violation. *Hallstrom v. City of Garden City*, 991 F.2d

24  1473, 1482 (9th Cir. 1993) (citing *Owen v. City of Independence*, 445 U.S. 662, 638 (1980)).  Under

25  *Saucier v. Katz*, a district court uses a two-step procedure to determine whether an official is entitled

to qualified immunity: (1) the court asks whether there has been a constitutional violation; and (2) if so, the court asks whether the state of the law at the time of the alleged violation was clear such that a reasonable person in the defendant's position should have known his actions violated the plaintiff's rights. 533 U.S. 194, 201 (2001).  Under *Pearson v. Callahan*, it is within the sound discretion of a district court which *Saucier* step to employ first; the court may examine the second step first in order to avoid constitutional holdings where a defendant will be free from liability due to qualified immunity in any case. 129 S. Ct. 808, 818 (2009).

Although Nevada has waived common-law sovereign immunity for itself and its political subdivisions in its own courts, it has not waived its Eleventh Amendment protection from suit in federal court. *See* Nev. Rev. Stat. § 41.031.  Waiver of immunity must be unequivocal, and Nevada has explicitly declined to waive its Eleventh Amendment immunity. § 41.031(3).  The Ninth Circuit has explicitly held that under this statute Nevada state entities retain immunity from suit in federal court under the Eleventh Amendment. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (Nevada Gaming Control Board); *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 678 (9th Cir. 1991) (State Industrial Insurance System).  The Nevada Supreme Court has also noted that state entities in Nevada are immune from suit in federal court under the Eleventh Amendment and that state entities cannot be sued as a "person" under § 1983 even in state court, where immunity is waived. *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 172 P.3d 131, 136 & n.22 (Nev. 2007) (citing *Simonian v. Univ. & Cmty. Coll. Sys. of Nev.*, 128 P.3d 1057, 1061 (Nev. 2006)).

The State of Nevada itself therefore clearly has sovereign immunity.  The Nevada Commission on Ethics has sovereign immunity if it is an agency of the state. *See NRDC v. Cal. Dep't of Trans.*, 96 F.3d 420, 421 (9th Cir. 1996) (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–46 (1993)).  It is. *See* Nev. Rev. Stat. § 281A.200(1) (creating the Commission).  The Court therefore dismisses as against the State Defendants.

1        **C.      LVMPD**

2        Although police departments are not generally "persons" under § 1983, *United States v.*

3    *Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005), an inter-governmental agency is a "person" under

4    § 1983 if the parties that created it "intended to create a separate legal entity subject to suit," *Hervey*

5    *v. Estes*, 65 F.3d 784, 792 (9th Cir. 1995).  LVMPD is therefore itself a "municipality" subject to suit

6    under § 1983 if it was intended to be a separate legal entity from the City of Las Vegas and Clark

7    County, which created LVMPD as a common police force.  The statute providing for the merger of

8    city and county law enforcement agencies makes clear that the Nevada Legislature did not intend for

9    such mergers to consist of mere cooperation agreements, but intended to create legal entities

10   independent from the respective cities and counties. *See* Nev. Rev. Stat. § 280.120 (1973) (providing

11   for complete supersession of former law enforcement agencies with the newly created agencies).

12   Nevada's merger statute provides a means of merging city and county law enforcement agencies

13   analogous to the merger of two corporations. *See* §§ 280.105–280.123.  The identities of the former

14   agencies are completely subsumed by the identity of the new agency. § 280.120.  LVMPD may

15   therefore be independently sued under § 1983. *See Estes*, 65 F.3d at 792.

16       In order to hold a municipality liable under *Monell* for declaratory, injunctive, or monetary

17   relief, the allegedly unconstitutional actions must have been pursuant to an official municipal policy,

18   ordinance, regulation, or officially adopted decision. *Id.* at 690–91.  The Ninth Circuit has

19   expounded:

20           In a *Monell* claim, there are three ways to show a policy or custom of a
         municipality: (1) by showing a longstanding practice or custom which constitutes the
21       standard operating procedure of the local government entity; (2) by showing that the
         decision-making official was, as a matter of state law, a final policymaking authority
22       whose edicts or acts may fairly be said to represent official policy in the area of
         decision; or (3) by showing that an official with final policymaking authority either
23       delegated that authority to, or ratified the decision of, a subordinate.

24   *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (citations and internal

25   quotation marks omitted).  Prospective injunctive relief may be had against a municipality's

enforcement of an allegedly unconstitutional state policy even if the municipality itself has only adopted the policy through enforcement. *Chaloux v. Killeen*, 866 F.2d 247, 250–51 (9th Cir. 1989). In any case, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Id.*

Here, Plaintiff has not only failed to plead any custom or policy as to any particular violation of § 1983, she has failed to plead any kind of wrongdoing at all by LVMPD. The basis of her having named LVMPD as a Defendant is a bit of a mystery. She claims only that LVMPD responded to a call concerning Williams' condition, that LVMPD did not investigate Williams' homicide, and that "victims" are prevented from filing police reports with LVMPD concerning allegedly fraudulent documents filed in probate court. None of this states a cause of action against LVMPD. The Court dismisses as against LVMPD for this reason. LVMPD also argues that the statutes of limitation on the IIED, civil rights, RICO, and conspiracy claims ran as against LVMPD before Plaintiffs filed the Complaint.

### D. The Clark County Defendants

As Defendants note, Don Ashworth was a probate commissioner who has absolute judicial immunity for his official acts in that capacity, under which he is an officer of the district court. Next, Defendants note that there is no private right of action for enforcement of the Full Faith and Credit Clause in federal court, either directly or under the implementing statute, 28 U.S.C. § 1738. *See Minnesota v. N. Sec. Co.*, 194 U.S. 48, 72 (1904); *Thompson v. Thompson*, 798 F.2d 1547, 1555–56 (9th Cir. 1986).

Next, Defendants note that there is no allegation of a policy or custom of violating civil rights by the Clark County Defendants, and in their individual capacities the Clark County Defendants have

discretionary immunity.  The remaining individual Clark County Defendant is Shafer, a former special administrator of the Estate.  The problem with the allegations against Shafer, as with the allegations generally, is that he is not alleged to engaged in any conduct that can properly be characterized as wrongdoing.  He is alleged only to have administered the estate as his employment by the County required, but Plaintiff characterizes this in conclusory fashion as some kind of fraudulent, criminal scheme.  Allegations of fraud, bribery, "orchestration of a phony probate," extortion, and "terrorism," are scattered throughout the Complaint, but notably absent are any facts pled that would make such conclusions plausible.  In most cases, the elements of the respective claims aren't even pled in conclusory, bare-bones fashion, much less so as to survive *Iqbal* and *Twombly*.  No two predicate crimes are pled under the RICO claim, for example, and no physical manifestation of emotional distress is alleged.

Moreover, the entire Complaint arises out of causes of action settled through the signed settlement agreement and the stipulated judgment.  The Court grants this motion to dismiss.  If Plaintiff wishes to be relieved from the settlement and/or the judgment—which is the gravamen of the Complaint—she must move for relief in the court that entered them.

### E.    The Coffing Defendants

The Coffing Defendants note that they are charged with sixteen claims but are mentioned only four times in the Complaint: the factual allegation that they were legal strategists to Defendant Shafer, his family, and entities he controlled, and the legal conclusions that they orchestrated a fraudulent scheme, are "persons" under 18 U.S.C. § 1961, and an unclear, incomplete allegation (the last page of the Complaint is missing in the record).  This is not enough to state causes of action against these Defendants, and the Court grants their motion to dismiss.

As a whole, the Complaint is vague and conclusory.  Also, as several Defendants note, the events giving rise to the Complaint occurred from 2002 to late 2006, and the Complaint was filed in late 2008, such that the statutes of limitations on many causes of action have run.  The stipulated

judgment in probate court appears to have occurred in 2004, and the settlement on the wrongful death claim occurred in late 2006.  Nevada has a two-year statute of limitations on IIED and civil rights violations.  Fraud-related claims run in three years.  The gravamen of the complaint concerns Plaintiff's fight against the jurisdiction of the Nevada district court in probate.  The Complaint was not brought until four to five years after the "principal actor's wrongful conduct began," according to the Complaint itself.  The stipulated judgment was entered on October 27, 2004, almost four years before the Complaint was filed, barring fraud, civil rights, and IIED claims as to the conduct underlying the probate matters.  Perhaps Plaintiff means to allege causes of action based only on the 2006 settlement agreement, but this is not clear at all from the Complaint.

In summary, the first two causes of action for declaratory relief of violations of the Full Faith and Credit Statute are implausible even under the *Conley* standard. *See N. Sec. Co.*, 194 U.S. at 72; *Thompson*, 798 F.2d at 1555–56.  The statutes of limitations on the third through seventh, fourteenth, and fifteenth causes of action have run.  Insufficient facts are pled as to the remaining causes of action, and it does not appear this can be cured by amendment.  Additionally, the state and judicial Defendants are absolutely immune on all causes of action.  There appears to be a judgment and a settlement agreement governing these matters.  If Plaintiff is now unsatisfied with the stipulated judgment regarding the Estate and the SA she signed, she must file for relief from judgment in the court that entered them.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 93, 94, 97, 99, 100) are GRANTED.

IT IS SO ORDERED.

Dated this 26th day of October, 2010.

_____
ROBERT C. JONES
United States District Judge