# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

TERRY WILLIAMS, individually and as executor/personal representative & successor trustee - Estate of CHARLES L. WILLIAMS, Sr., - CHARLES L. WILLIAMS LIVING TRUST

    Plaintiffs,

v.

JARED E. SHAFER, et al.,

    Defendants.

2:09-cv-810-RCJ-LRL

**ORDER**

Currently before the Court are *pro se* Plaintiff Terry Williams's two Motions for Reconsideration (#126, 129). Plaintiff did not appear for oral argument on July 15, 2011.

## BACKGROUND[1]

On November 2, 2002, an employee of the Silver Ridge Health Care Center in Las Vegas, Nevada, gave decedent Charles L. Williams, Sr. ("Williams") breakfast orally despite the fact that Williams was being fed through a feeding tube in his stomach. (Compl. (#50-2) ¶¶ 9–11). The accidental feeding caused Williams' death. (*Id.* ¶ 11). Plaintiffs Terry Williams ("Plaintiff"), as personal representative of Williams' estate, and the Williams' estate ("the Estate") submitted a will to probate in Maryland. (*Id.* ¶ 21). Defendant Jared Shafer, a former Clark County Public Administrator, allegedly petitioned a Nevada state court for a letter of Co-Special Administration by presenting an "out-of-state, estranged" relative and allegedly

---

[1] These facts are taken from this Court's October 26, 2010 order. (Order (#123)).

concealed the existence of the other relatives pursuing probate in Maryland. (*Id.* ¶ 25).[2] When Plaintiff discovered that Shafer had done this, Shafer contested the will in the Maryland court, forced Plaintiff's joinder in the Nevada state court, and challenged the rulings of the Maryland court in the Nevada court, allegedly in violation of the Full Faith and Credit Clause. (*Id.* ¶¶ 27–31).

At a settlement conference on or about July 21, 2003, Plaintiff and her two siblings, Ann and Charles Jr., who were all represented by counsel, agreed that they would separate their father's estate equally and that attorneys Althea Gilkey, who represented Plaintiff and Ann, and attorney Terry Coffing, who represented Charles Jr., would represent the Estate in its wrongful death action. (Horton Mot. Dismiss. (#93) at 3). Gregory Dallas Horton replaced Coffing because of a conflict of interest. (*Id.*). A stipulated judgment bearing the signature of Plaintiff and her siblings provided *inter alia*: (1) that the siblings would dismiss the Maryland probate action; (2) that the siblings would have to unanimously consent to settlement of the Estate or to terminate Horton and Gilkey as the Estate's attorneys; (3) that each party was entitled to sue for wrongful death separately, with Horton representing Charles, Jr. and Gilkey representing Plaintiff and Ann; (4) that the Estate would be equally divided between the siblings; and (5) that the siblings would have to unanimously consent to any litigation regarding the Estate. (Stip. J. (#93-3)). The siblings, including Plaintiff, signed an additional confession of judgment. (*See* Conf. J. (#93-4)).

They then proceeded with the wrongful death claim against AHP of Las Vegas ("AHP"), the assisted living center where Williams had resided. AHP settled with the siblings for $1 million. After existing attorney's liens against the Estate were satisfied, the siblings split $659,867.46 equally, resulting in awards of $219,955.82 a piece before attorney's fees and costs. Plaintiff and her siblings signed the settlement agreement ("SA"). (*See* SA (#93-5)).

In October 2008, Plaintiff, *pro se*, sued Defendants in the U.S. District Court for the

---

[2] It is difficult to tell from the Complaint whether Plaintiffs mean to allege what Defendants actually did or only what they planned to do but did not actually do, because the allegations are largely written in the subjunctive mode.

Central District of California on sixteen causes of action: (1)–(2) Declaratory Relief of Violations of the Full Faith and Credit Statute; (3) Violations of 42 U.S.C. § 1981; (4) Violations of 42 U.S.C. § 1983 (equal protection and due process); (5) Violations of 42 U.S.C. § 1985; (6) Intentional Misrepresentation; (7) Declaratory Judgment; (8) Unjust Enrichment; (9) Breach of Contract; (10) Breach of Fiduciary Duty; (11) Accounting; (12) Malpractice; (13) Tortious Interference; (14) Civil Conspiracy; (15) Intentional Infliction of Emotional Distress ("IIED"); and (16) RICO, 18 U.S.C. § 1962.  That court transferred venue to this District due to lack of personal jurisdiction over Defendants in California.  (*See* Order (#50-50)).

Five groups of Defendants separately moved to dismiss: (1) Gregory Dallas Horton (#93); (2) Stewart Bell, Nevada Commission on Ethics, State of Nevada, and Valorie Stutz-Vega (# 94); (3) Las Vegas Metropolitan Police Department ("LVMPD") (#97); (4)  Don Ashworth, Clark County Coroner's Office, Clark County Public Administrator, Clark County, and Shafer (#99); and (5) Terry Coffing, Mark Morrow, and Elyse M. Tyrell (#100).

The Court dismissed the lawsuit against Horton because Plaintiff had failed to plead with particularity against him, Horton was not a state actor, and Plaintiff had not pled a contractual relationship with Horton. (*See* Order (#123) at 5).  The Court dismissed the lawsuit against Judges Stewart Bell and Valorie Stutz-Vega because they had absolute judicial immunity for their acts and noted that the judges had probate jurisdiction.  (*Id.* at 5-6).  The Court dismissed the lawsuit against the State of Nevada and the Nevada Commission on Ethics based on sovereign immunity.  (*Id.* at 7).  The Court dismissed the lawsuit against the LVMPD for failure to plead any kind of wrongdoing by the LVMPD.  (*Id.* at 9).  The Court dismissed the lawsuit against Don Ashworth, a probate commissioner, based on absolute judicial immunity for his official acts in that capacity.  (*Id.*). The Court dismissed the lawsuit against the Clark County Defendants because there were no allegations of a policy or custom of violating civil rights by those defendants and because they had discretionary immunity.  (*Id.* at 9-10).  The Court dismissed the lawsuit against Coffing, Morrow, and Tyrell because, although they were named in all sixteen counts, the complaint only mentioned them four times. (*Id.* at 10).

The Court dismissed the lawsuit against Schafer, a former special administrator of the Estate, because the allegations did not allege any conduct that could properly be characterized as wrongdoing. (*Id.*). The Court noted that Schafer was alleged to "only to have administered the estate as his employment by the County required" but that Plaintiff conclusively characterized his actions as "some kind of fraudulent, criminal scheme." (*Id.*). The Court further found:

> Allegations of fraud, bribery, "orchestration of a phony probate," extortion, and "terrorism," are scattered throughout the Complaint, but notably absent are any facts pled that would make such conclusions plausible. In most cases, the elements of the respective claims aren't even pled in conclusory, bare-bones fashion, much less so as to survive *Iqbal* and *Twombly*. No two predicate crimes are pled under the RICO claim, for example, and no physical manifestation of emotional distress is alleged.
>
> Moreover, the entire Complaint arises out of causes of action settled through the signed settlement agreement and the stipulated judgment. The Court grants this motion to dismiss. If Plaintiff wishes to be relieved from the settlement and/or the judgment—which is the gravamen of the Complaint—she must move for relief in the court that entered them.

(*Id.*).

The Court also found the following. (*Id.*). The events giving rise to the complaint had occurred between 2002 and 2006 and that Plaintiff had filed the complaint in late 2008. (*Id.*). The statute of limitations had run on the third, fourth, fifth, sixth, seventh, fourteenth, and fifteenth causes of action, which could not be cured by amendment. (*Id.* at 11). Plaintiff's first two causes of action for declaratory relief of violations of the Full Faith and Credit Statute were implausible. (*Id.*). Plaintiff had pled insufficient facts to the remaining causes of action and that they could not be cured by amendment. (*Id.*). The state and judicial defendants had absolute immunity on all causes of action. (*Id.*).

The clerk entered judgment on October 27, 2010. (Clerk's Judgment (#124)). On November 9, 2010, Plaintiff filed her first motion for reconsideration (#126). On November 15, 2010, she filed her second motion for reconsideration (#129).

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P.

59(e) (2011). Under this rule, it is appropriate to alter or amend a judgment if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). Newly discovered evidence is evidence that "(1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (internal quotations omitted). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F.Supp.2d 1280, 1288 (D. Nev. 2005).

## DISCUSSION

Plaintiff filed both of her motions for reconsideration pursuant to Rule 59(e). (*See generally* First Mot. for Recon. (#126); Second Mot. for Recon. (#129)). Because both of her motions were filed within 28 days of the entry of judgment, this Court analyzes Plaintiff's motions for reconsideration under Rule 59(e). Although Plaintiff files two motions for reconsideration, the substantive arguments for both motions are exactly the same. (*Compare* First Mot. for Recon. (#126) at 1-7, *with* Second Mot. for Recon. (#129) at 1-7). The only difference between the two motions are the number of exhibits they contain. The first motion's exhibits are included in the second motion's exhibits. For that reason, this order will cite to the second motion for reconsideration. Additionally, Plaintiff files identical supplemental points and authorities for each motion for reconsideration. (*Compare* First Suppl. Points (#128), *with* Second Suppl. Points (# 130)). This order will cite to the second supplemental points and authorities.

In her motion for reconsideration, Plaintiff argues that the Court should have granted her leave to amend her complaint. (Second Mot. for Recon. (#129) at 1). She argues that the

allegations in her complaint are "actual occurrences" and that she filed her complaint "well within her 6-year, 4-year, and 2-year statutes of limitations." (*Id.* at 2). She asserts that she is filing this motion so that the Court can consider her supplement. (*Id.* at 3). She contends that new information surfaced after October 1, 2010 and attaches several Ripoff Reports.com postings and newspaper articles as exhibits. (*Id.* at 3-4). She generally argues that Defendants engaged in a "wrongful civil conspiracy to commit crimes against public justice and property." (*Id.* at 5).

In support of her motion, she attaches several excerpts of postings, authored by random people, from Ripoff Report.com, dated October 2010, that name and portray Jared Schafer in a negative light. (*See id.* at 14-16, 18-28). She also attaches Las Vegas Review-Journal articles from 1983, 1984, and 1987 that discuss Schafer. (*Id.* at 30, 34, 37, 42).

In her supplemental points and authorities, Plaintiff provides conclusory allegations that Defendants "tortiously interfered with assets" and "illegally intercepted assets." (Second Suppl. Points (#130) at 2). She also reasserts that Judges Bell and Stutz-Vega did not have jurisdiction. (*Id.* at 3).

Defendants filed oppositions and joinders to oppositions to Plaintiff's motions for reconsideration. (*See* Coffing, Morrow, & Tyrell Opp'n (#131); Horton Opp'n (#132); LVMPD Opp'n (#133); Clark County, Shafer, & Ashworth Opp'n (#134); Coffing, Morrow, & Tyrell Joinder (#140); State of Nevada, Bell, Stutz-Vega Joinder (#145)).

Plaintiff filed replies. (Replies (#136, 139, 142, 143)). In one reply, Plaintiff asserts that the Government Accountability Office ("GAO") had recently released a report on "Guardianship–Cases of Financial Exploitation, Neglect, and Abuse of Seniors" in September 2010. (Suppl. to Reply (#139) at 3).

In this case, Plaintiff does not present any newly discovered evidence. First, the Ripoff Report.com postings would not have changed the outcome of the motions to dismiss in October 2010. The postings do not present any facts about what happened in Plaintiff's case, but instead are examples of alleged harm that Schafer had caused other people. Second, the Las Vegas Review-Journal articles from the 1980s could have been discovered through due

diligence if Plaintiff had wanted to present them in response to the motions to dismiss. Finally, the GAO report does not present any facts about what happened in Plaintiff's case and, therefore, would not have changed the outcome of the motions to dismiss. Additionally, to the extent that Plaintiff is arguing that the GAO report is a change of intervening law, the report is not law. Moreover, Plaintiff has not established that this Court committed clear error with respect to the statute of limitations finding because Plaintiff conclusively states that she had filed within the statute of limitations period. Plaintiff also has not demonstrated a change of controlling law or clear error with respect to the Court's finding that Judges Bell and Stutz-Vega had jurisdiction. Accordingly, the Court denies the motions for reconsideration.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's Motions for Reconsideration (#126, 129) are DENIED.

DATED: This 26th day of July, 2011.

_____
United States District Judge